IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| CHRISTOPHER LEE GAITHER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:15-CV-104-Z-BR |
| | § | |
| RAY D. CRUZ, GENE W. SMITH, | § | |
| DEANA MCBROOM, and ANDREW M. | § | |
| GRATZ, | § | |
| | § | |
| Defendants. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION TO GRANT DEFENDANTS MCBROOM, GRATZ AND CRUZ'S JOINT MOTION FOR SUMMARY JUDGMENT AND GRANT DEFENDANT SMITH'S MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Christopher Lee Gaither ("Plaintiff") filed an Amended Complaint pursuant to 42 U.S.C. section 1983. (ECF 35). Plaintiff is currently incarcerated in the Bureau of Prisons; however, at the time of the incidents alleged in the Amended Complaint, Plaintiff was incarcerated at the Texas Department of Criminal Justice ("TDCJ") Bill Clements ("Clements") Unit in Amarillo, Texas. Defendants McBroom, Gratz and Cruz filed a Joint Motion for Summary Judgment, Brief in Support and Appendix, asserting qualified immunity on Plaintiff's claims. (ECF 113–115). Plaintiff filed a Response to the Motion for Summary Judgment, Brief in Support and Appendix. (ECF 124–126). Defendant Smith also filed a Motion for Summary Judgment for Failure to Exhaust Administrative Remedies, Brief in Support and Appendix. (ECF 91–93). Plaintiff also filed an "Objection"/Response, Brief in Support and Appendix to this Motion for Summary Judgment. (ECF 100–102).

The undersigned United States Magistrate Judge is of the opinion that Defendants McBroom, Gratz, and Cruz's Motion for Summary Judgment should be GRANTED. Additionally, Defendant Smith's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies should also be GRANTED, and Plaintiff's Complaint should be DISMISSED with prejudice.

## I.     FACTUAL BACKGROUND

On April 2, 2013, Plaintiff was utilizing the law library when Defendant McBroom called additional correctional officers (Defendants Gratz and Cruz) to remove Plaintiff from the library for allegedly disruptive behavior. (ECF 35 at 4). Plaintiff claims that "without any provocation or justification" Defendants Gratz and Cruz used force "maliciously and sadistically" to cause him harm. *Id*. By his original Complaint, Plaintiff asserted that Defendant McBroom only called for security because of her dislike of African Americans (and because Plaintiff is African American). (ECF 3 at 6). Plaintiff also claims Defendants Gratz and Cruz used racial slurs, in addition to excessive force, when removing him from the law library. (ECF 35 at 4). Although not articulated in his Amended Complaint, Plaintiff specifies in earlier pleadings that Defendants Gratz and Cruz kicked him in the knee, slammed his head repeatedly into a brick wall, slammed his face into a filing cabinet and/or bookshelf, and repeatedly punched and kicked him during his removal from the law library. (ECF 3 at 6). Plaintiff claims that as a result of the excessive force he suffered from migraines, visual impairment and partial blindness, pain, emotional distress and psychological trauma, increased blood pressure, and dizziness. *Id.*

During the investigation into the use of force, following a grievance filed by Plaintiff, Defendants McBroom, Gratz and Cruz all disputed the Plaintiff's version of events and stated that Plaintiff was removed from the law library for his disruptive behavior (hurling insults at Defendant

McBroom) and that *no force* was used in removing Plaintiff from the library other than applying handcuffs to Plaintiff, warning him to comply with orders, and escorting him from the room. (ECF 115 at 26–27, 31–32). Although the transportation of Plaintiff out of the library was initially recorded, the recording was not saved because it was unnecessary to use any force, according to Defendants Gratz and Cruz. *Id*. at 27. Further, other offenders who were present in the law library at the time of the incident reported that Plaintiff's behavior was frequently problematic and also that he is frequently disruptive. *Id.* at 27. Only one offender (who was also disciplined for talking without permission in the library) stated that Defendant McBroom "escalated" the situation and lied about Plaintiff's disruptive behavior, but that offender made no mention of any assault. *Id.* Plaintiff also initially claimed that another law library officer, Ms. Glenn, was a witness to the excessive use of force, but she was not even at work on the day in question. (ECF 115 at 34). Additionally, while being escorted from the law library, Plaintiff made death threats during the transport that resulted in him being placed in prehearing (disciplinary) housing – after he was seen by medical personnel due to the allegations he made while transported – and ultimately resulted in his receiving a disciplinary conviction for threatening Defendant Cruz. (ECF 115 at 31–32, 46–53).

Before being placed in prehearing (disciplinary) housing as a result of his threats to Defendant Cruz and his disruptive behavior, Plaintiff was seen by medical personnel because he made verbal claims that he was assaulted. *Id*. at 28–29. Defendants accurately lay out the summary judgment evidence indicating that the only injury seen on Plaintiff following the alleged assault was swelling near his eye and jaw:

> •    On April 2, 2013, under Pre-Segregation Note, "Gaither was seen by medical for [Pre-Hearing Detention] physical, was angry, screaming at officers that they assaulted him. Gaither stated they hurt his eye, face, and shoulders. No injuries were seen on offender. Gaither's blood pressure was elevated but patient was

removed from clinic due to his aggressive behavior." (citing ECF 115 at 086-089).

- On April 2, 2013, the attending nurse noted Gaither had swelling under "R eye-superior portion of R maxilla. Little bruising- no lacerations or bleeding. Pano (full mouth x-ray) and exam reveals no fractures or damage to teeth. TMJ exam reveals no tenderness and no deviation upon opening." *Id.* at 058-061.

- On April 2, 2013, during mental health chronic care monitoring, Gaither's jaw appeared swollen. *Id.* at 074.

- On April 3, 2013, patient was scheduled for an optometry appointment, but was a no show. *Id.* at 064.

- During a sick call exam on April 8, 2013, Gaither complains about having swelling in his feet, and makes no complaint about his injuries from an alleged use of force. *Id.* at 056-057.

- On April 9, 2013, Gaither was checked for mental health intake, and makes no mention of injuries from alleged use of force. *Id.* at 071-072.

- On April 11, 2013, Gaither requests insoles, and makes no mention of injuries from use of force. *Id.* at 079-080.

- On April 23, 2013, Gaither was seen by medical, was upset that he has been off his medication for six months, and makes no mention of injuries suffered from an alleged use of force during this consultation. *Id.* at 067-070.

- Lastly, on April 24, 2013, Gaither was seen by optometry, which revealed corneal scar outside visual axis suspect forceps, and is not affecting vision. *Id.* at 062-064, 091-094.

(ECF 113 at 4–5). In short, Plaintiff received follow-up dental care and vision care based on his assault claims. *Id*.

The day after the law library incident, Plaintiff filed a grievance against Defendants Gratz, Cruz and McBroom, which Defendant Smith investigated. (ECF 115 at 29–30). Defendant Smith's investigation included interviewing all other Defendants and offenders present at the time of the incident. *Id.* at 26–40. Plaintiff claims Defendant Smith retaliated against Plaintiff for filing grievances against other Defendants. (ECF 35 at 6). Plaintiff states that Defendant Smith used racial slurs, threatened to falsify reports, subjected Plaintiff to less desirable living conditions, and

denied him food in retaliation for the filing of the grievance on the excessive force incident. *Id.* at 6–7. There is no record that Plaintiff filed grievances against Defendant Smith for his alleged behavior prior to filing the present lawsuit.

## II.    PLAINTIFF'S ALLEGATIONS

Plaintiff contends that his federal constitutional rights were violated in the following ways:

1.    Plaintiff's Eighth Amendment rights were violated when Defendants Gratz and Cruz used excessive force against him.

2.    Plaintiff's Eighth Amendment rights were violated when Defendant McBroom failed to intervene in the use of force by Defendants Gratz and Cruz.

3.    Plaintiff's Eighth Amendment rights were violated when Defendants Gratz and Cruz acted with deliberate indifference to his medical needs following the use of force.

4.    Plaintiff's Eighth Amendment rights were violated when Defendant Smith retaliated against him for filing grievances against other Defendants.

(ECF 35 at 3–4, 6–8).

## III.    STANDARD OF REVIEW

In order to prevail, Plaintiff must present a genuine issue of material fact on each of his claims, and Plaintiff must have exhausted his administrative remedies on these claims.

In a civil case, "[a] party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought." FED. R. CIV. PROC. 56(b). When a summary judgment movant does not have the burden of proof on a claim, it can obtain summary judgment by pointing the court to the absence of evidence on any essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so, the nonmovant must go beyond its pleadings and designate specific facts demonstrating that there is a genuine issue of material fact for trial. *See id.* at 324–25; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). A genuine issue of

material fact exists if the evidence is such that a reasonable trier of fact could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F. Supp. 2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Specifically, when qualified immunity has been raised, "[t]he moving party is not required to meet [his] summary judgment burden for a claim of immunity." *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (internal quotation marks omitted) (citing *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)). Instead, "[i]t is sufficient that the movant in good faith pleads that [he] is entitled to qualified immunity. Once [he] asserts this affirmative defense, the burden shifts to the plaintiff to rebut it." *Id.* (internal quotation marks and emphasis omitted); *see also McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (stating that "[o]nce qualified immunity is asserted, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense"); *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008) (noting that when a government official pleads qualified immunity, the plaintiff must "rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct").

Once the burden of proof shifts to a plaintiff, the plaintiff must negate qualified immunity. *Brown*, 623 F.3d at 253. This burden is not satisfied through a mere showing of "some

metaphysical doubt as to the material facts" or by "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, on summary judgment, "the plaintiff can no longer rest on the pleadings . . . [, ]and the court looks to the evidence before it. . . ." *McClendon*, 305 F.3d at 323 (internal quotation marks omitted) (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). However, the court looks to this evidence "in the light most favorable to the plaintiff," *id.*, with "all inferences . . . drawn in his favor." *Brown*, 623 F.3d at 253.

## IV.    MERITS

Defendants McBroom, Gratz and Cruz have asserted entitlement to qualified immunity in the Joint Motion for Summary Judgment. (ECF 113 at 6, ECF 114 at 12). Additionally, Defendants claim Plaintiff has not presented any evidence to create a factual dispute on his claims of excessive force, deliberate indifference, or failure to intervene, nor did Plaintiff present any evidence to establish more than a *de minimus* injury resulted from any alleged use of force. *Id*. Thus, even absent entitlement to qualified immunity, Defendants argue Plaintiff's claims fail because his claims are factually baseless.

Pursuant to 42 U.S.C. § 1983, private citizens may sue public officials in federal courts for violations of federal statutory or constitutional rights that those officials have committed against them. *See Monroe v. Pape*, 365 U.S. 167, 171 (1961). However, public officials enjoy an immunity from liability under § 1983 known as *qualified immunity*. When properly applied to public officials, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 34l (1986).

Qualified immunity serves several important goals. Perhaps most crucially, courts have expressed a concern over "the deterrent effect that civil liability may have on the willingness of

public officials to fully discharge their professional duties." *Sanchez v. Swyden*, 131 F.3d 1144, 1148–49 (5th Cir. 1998) (citing *Pierson v. Ray*, 386 U.S. 547, 555 (1967); *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982); and *Scheuer v. Rhodes*, 416 U.S. 232, 239–41 (1974)). Qualified immunity therefore counters this deterrent by helping to protect public officials from liability. Additionally, qualified immunity helps to "avoid excessive disruption of government." *Malley*, 475 U.S. at 341 (internal quotation marks omitted). To this end, qualified immunity serves to terminate a claim against a public official as soon as possible in a judicial proceeding, even before discovery, "and permit the resolution of many insubstantial claims on summary judgment." *Id.*; *see Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (quoting *Harlow*, 457 U.S. at 818).

The Supreme Court has articulated a two-part test for determining if a "public official" is entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). First, a court must determine whether the defendant's conduct violated a federal right. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). Second, a court must determine "whether the right in question was 'clearly established' at the time of the violation." *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

Regarding the second part, "[g]overnmental actors are shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* More precisely, for a violation of clearly established federal rights to occur, "[p]re-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *See Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997) (emphasis in original omitted). If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the

officer's qualified immunity remains intact. *See Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (citing *Malley*, 475 U.S. at 341). In essence, "the salient question . . . is whether the state of the law" at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.' *Tolan*, 572 U.S. at 656 (citing *Hope*, 536 U.S. at 741). Finally, in order to qualify as "clearly established," the law in question should not be defined at a "high level of generality" but instead be "particularized to the facts of the case." *White v. Pauly*, --- U.S. ---, 137 S.Ct. 548, 552 (2017).

As stated earlier, a qualified immunity defense alters the usual summary judgment burden of proof. *Brown*, 623 F.3d at 253. If the moving party in a summary judgment motion "plead[s] his good-faith entitlement to qualified immunity, the burden of proof shifts to the non-moving party to rebut it. *See Hathaway*, 507 F.3d at 319. It is a plaintiff's burden to present evidence that a defendant is not entitled to qualified immunity when that defense is raised. *See Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001). However, although "[t]he plaintiff bears the burden of negating qualified immunity, . . . all inferences are drawn in his favor." *Brown*, 623 F.3d at 253.

## A.  Excessive Force (Defendants Gratz and Cruz)

In addressing an excessive force claim brought under section 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. *Baker v. McCollan*, 443 U.S. 137, 140 (1979) ("The first inquiry in any § 1983 suit" is "to isolate the precise constitutional violation with which [the defendant] is charged"). In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct.

*Graham v. Connor*, 490 U.S. 386, 394 (1989). The validity of the claim must then be judged by reference to the specific constitutional standard that governs that right, rather than to some generalized "excessive force" standard. *Id.* (*cf. Tennessee v. Garner*, 471 U.S. 1 (1985) (claim of excessive force to effect arrest analyzed under a Fourth Amendment standard); *Whitley v. Albers*, 475 U.S. 312 (1986) (claim of excessive force to subdue convicted prisoner analyzed under an Eighth Amendment standard)).

In this instance, Plaintiff alleges a violation under the Eighth Amendment for excessive force. Plaintiff objects to the manner of force used to remove him from the law library, which is properly addressed under the Eighth Amendment standards on excessive force.

It is clearly established law that prison staff cannot cause the unnecessary and wanton infliction of pain. *Whitley*, 475 U.S. at 320. The "core judicial inquiry" into a plaintiff's claim of excessive force under the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Martin v. Seal*, 510 F. App'x 309, 312 (5th Cir. 2013) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). The inquiry has two components: (1) an objective one that focuses on whether the alleged wrongdoing was nontrivial and harmful enough to violate the constitution and (2) a subjective one that focuses on the mental state of the alleged wrongdoer. *Hudson*, 503 U.S. at 7-8. The courts look to five nonexclusive factors to make this determination:

1. the extent of the injury suffered;
2. the need for the application of force;
3. the relationship between this need and the amount of force used;
4. the threat reasonably perceived by the responsible officials; and
5. any efforts made to temper the severity of a forceful response.

*Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998) (citing *Hudson*, 503 U.S. at 7). The Court can consider these factors in any order. *Id*. "Excessive force claims are necessarily fact-intensive;

whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.' " *Deville*, 567 F.3d at 167 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Thus, the Court will analyze the *Hudson* factors as applied to Plaintiff's claims.

> 1. *The Extent of the Injury Suffered*

The Eighth Amendment's prohibition of cruel and unusual punishment "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10. The Fifth Circuit has expressly held that a plaintiff bringing an Eighth Amendment excessive use of force claim against a correctional officer must show injuries that are more than *de minimis*, that is, the plaintiff's injuries must be "significant, serious, or more than minor." *Id.* at 9-10 ("The Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.' ").

Although a showing of "significant injury" is no longer required in the context of an excessive force claim, "we do require a plaintiff asserting an excessive force claim to have 'suffered at least some form of injury.' " *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)) (quoting *Jackson v. R.E. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993)). The injury must be more than a *de minimis* injury and must be evaluated in the context in which the force was deployed. *Glenn*, 242 F.3d at 314. "In *Williams*, for example, this court held that the loss of breath and dizziness suffered when the suspect was allegedly choked while an officer searched his mouth did not amount to an [sic] cognizable injury." *Id*. "This court stated that '[w]henever a detainee is physically searched by an officer, a physical confrontation inevitably results' and therefore concluded that fleeting dizziness,

temporary loss of breath, and coughing did not rise to the level of a constitutional violation." *Id*. (citing *Williams* 180 F.3d at 704). However, when force employed and resultant injury is unrelated to the necessary force required to restore order and is motivated instead by malice, such injury is never *de minimus*. *See id*.

One way to distinguish if an injury is "*de minimus*" is to consider whether medical care and treatment was needed to treat the injury. *See Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999). In *Gomez*, the court determined that the plaintiff "did not seek or receive medical treatment" for his alleged injury, and his injury was considered *de minimus* as follows:

> In *Siglar*, we described the complained of conduct and injury as follows: "[the corrections officer] twisted Siglar's arm behind his back and twisted Siglar's ear. Siglar's ear was bruised and sore for three days but he did not seek or receive medical treatment for any physical injury resulting from the incident. There is no allegation that he sustained long term damage to his ear." [*Siglar v. Hightower*, 112 F.3d 191, (5th Cir. 1997)]. We stated that these allegations presented the question "whether Siglar's bruised ear amounts to a 'physical injury' that can serve as the basis for his excessive force" claim, and concluded that because "Siglar's alleged injury—a sore, bruised ear lasting for three days—was *de minimis* " he had therefore "not raised a valid Eighth Amendment claim for excessive force." *Id*.

*Gomez*, 163 F.3d at 924.

As evidenced by the medical records, the only evidence that Plaintiff suffered any injury was the swelling and/or tenderness noted near his eye and jaw on the day of the incident. (ECF 115 at 58–61). Although plaintiff was seen by an optometrist for his complaints about his eye and the optometrist noted some scarring, the scarring (if caused by the incident) was not affecting his vision and did not require treatment. ECF 115 at 62–64, 91–94. Further, Plaintiff did not request additional medical intervention for his dizziness and migraines, indicated as "injuries" by his Complaint. Although the Court has some concern that Plaintiff presented with bruising to the face and Defendants indicate no force was used on Plaintiff, Plaintiff's version of events is entirely contradicted by the record. The bruising and/or tenderness of the eye and jaw, without any

lacerations or any other injuries, does not support a person having his head slammed into a brick wall, bookshelves, and a filing cabinet repeatedly, as claimed by Plaintiff. Thus, the bruising suffered by Plaintiff, as well as any dizziness or migraines, *if* related to any force used against him, is a *de minimus* injury. However, even if the injury suffered was not *de minimus*, Plaintiff has not created a fact issue that the force used was employed maliciously to cause harm.

### 2. The Need for the Application of Force

Plaintiff asserts that the force used against him was entirely unprovoked (ECF 35 at 4), in direct contradiction to the claims asserted by the Defendants (that Plaintiff was removed from the law library for insulting staff). The summary judgment evidence indicates that Plaintiff was considered by other offenders to be a disruptive presence in the law library, including on the day in question. (ECF 115 at 27). Further, Defendant McBroom called security to the law library because of Plaintiff's behavior (*Id*. at 26–32), and there is no competent summary judgment evidence that supports Plaintiff's conclusory statements that she did so based on racial motivation.

Defendants Gratz and Cruz indicated that they arrived at the law library, placed Plaintiff in hand restraints and escorted him from the library. *Id*. at 31–32. Additionally, Plaintiff received a disciplinary case for his behavior toward Defendant Cruz during his transport, including making death threats to Defendant Cruz. *Id*. at 46–52. As such, if force was deployed following the use of hand restraints as argued by the Plaintiff, some force was necessary for Plaintiff's non-compliance. However, the amount of force described by Plaintiff could be excessive, if credible, but the Court does not find support for Plaintiff's version of events in the summary judgment evidence.

### 3. Relationship between Need for Force and Amount of Force Used

Plaintiff's version of the amount of force used during the assault is not credible based on the summary judgment evidence. Plaintiff was immediately seen by medical personnel following

the alleged incident (where he continued to act belligerently), and only swelling near the eye and jaw and/or light bruising was noted by medical personnel. *Id*. at 58–61. This is inconsistent with Plaintiff's version of the force  Defendants allegedly used against him. As such, either Plaintiff had some previous injury and no force was used as indicated by Defendants, or if force was used, such as pushing Plaintiff into a table to handcuff him, etc., then such force resulted only in *de minimus* injury and was thus not excessive or disproportionate to Plaintiff's disruptive behavior.

### 4.    The Threat Perceived by Officers

According to the summary judgment evidence, Plaintiff verbally insulted Defendant McBroom prior to his removal from the law library. (ECF 115 at 26–27). During his transport, Plaintiff threatened the life of Defendant Cruz and received a disciplinary conviction as a result. *Id*. at 46–52. The use of hand-restraints and his removal from the law library – the force employed as indicated by the competent summary judgment evidence – is appropriate to the threat perceived by the officers.

### 5.    Efforts to Temper Force

The summary judgment evidence indicates that Plaintiff was verbally warned to comply with orders after he was placed in hand restraints and before he was transported. (ECF 115 at 31–32). Further, Plaintiff was escorted directly to medical from the law library following the alleged use of force, based on his verbal claims of injury. *Id.*

The Court determines that, applying the *Hudson* factors to the use of force against Plaintiff, Defendants Gratz and Cruz are entitled to qualified immunity. The Court determines that Plaintiff failed to create a genuine issue of material fact concerning the amount of force used or the injury suffered as a result, as well as the need for force. None of Plaintiff's assertions are supported by

the competent summary judgment evidence. Thus, Plaintiff's claims against Defendants Gratz and Cruz for excessive force should be dismissed.

### B. Failure to Intervene in Use of Force (Defendant McBroom)

The Eighth Amendment prohibits the infliction of cruel and unusual punishments, and "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). The treatment and the confinement conditions to which the Eighth Amendment applies includes both the safety and health of prisoners. *Id*.

The failure to protect an inmate from the use of excessive force by others can also be an Eighth Amendment violation that may give rise to liability under Section 1983. *See Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) (An officer may be liable under 42 U.S.C. section 1983 if she is "present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force.")

But "this 'bystander' liability obtains only if the bystander defendant had reasonable opportunity to intercede and prevent the constitutional violation." *Rogers v. Buchanan*, No. 3:12-CV-2458-M-BN, 2015 WL 3439145, at *5–6 (N.D. Tex. Mar. 27, 2015), *report and recommendation adopted as modified*, No. 3:12-CV-2458-M-BN, 2015 WL 3504518 (N.D. Tex. May 28, 2015) (citing *Blacke v. City of Galveston*, Tex., No. 10–cv–388, 2014 WL 794025, at *8 (S.D. Tex. Feb. 27, 2014) (citing *Spencer v. Rau*, 542 F.Supp.2d 583, 594 (W.D. Tex. 2007) (citing *Davis v. Rennie*, 264 F.3d 86, 97–98 (1st Cir. 2001) (holding that an officer can be held liable under Section 1983 for failure to intervene "if the defendant was present when the force was used,

observed the use of excessive force, was in a position where he could realistically prevent the force, and had sufficient time to prevent it")))).

The "reasonable opportunity to intercede and prevent the constitutional violation" is "[t]he focus of the bystander-liability inquiry." *Rogers*, 2015 WL 3439145 at *5 (citing *Malone v. City of Fort Worth, Tex.*, No. 4:09–cv–634–Y, 2014 WL 5781001, at *16 (N.D. Tex. Nov. 6, 2014); *Terrell v. Castleberry*, Civ. A. No. H–06–2025, 2008 WL 687519, at *5 (S.D. Tex. Mar. 12, 2008) ("A prison guard has a duty to intervene and attempt to end an assault on an inmate. The rationale underlying the bystander liability theory is that a bystanding officer, by choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer.")). Thus, "an officer may be liable under § 1983 under a theory of bystander liability where the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.' " *Rogers*, 2015 WL 3439145 at *6 (citing *Malone*, 2014 WL 5781001, at *16 (quoting *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013))).

The Court determines that Defendant McBroom is entitled to qualified immunity because there is no competent summary judgment evidence that she ever observed force used against Plaintiff, nor is there any evidence that she would have had a reasonable opportunity to prevent any harm to the Plaintiff if she did witness force used while removing Plaintiff from the law library. Thus, the claim against Defendant McBroom should be dismissed.

### C.  Deliberate Indifference to Medical Needs (Defendants Gratz and Cruz)

"A plaintiff making a claim for failure to provide adequate medical care 'must prove that care was denied and that this denial constituted 'deliberate indifference to serious medical needs.'" *See Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985) (quoting *Estelle*, 429 U.S. at 104). A serious medical need is "one for which treatment has been recommended or for which the need is

so apparent that *even a layman* would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, n.12 (5th Cir. 2006). "[T]he facts . . . must clearly evince the medical need in question and indicate that the denial of treatment was *much* more likely than not to result in serious medical consequences." *See Johnson*, 759 F.2d at 1238 (emphasis added).

The deliberate indifference requirement is similar to the deliberate indifference requirement for a claim of failure to protect an inmate from excessive force. *See Farmer*, 511 U.S. at 837 (stating "that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate *health* or safety" (emphasis added)). A showing of deliberate indifference requires the plaintiff to submit evidence that prison officials "refused to treat [the prisoner], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson*, 759 F.2d at 1238. Neither unsuccessful medical treatment, acts of negligence, medical malpractice, nor a prisoner's disagreement with his medical treatment, absent exceptional circumstances, constitute deliberate indifference. *See Hall v. Thomas*, 190 F.3d 693 (5th Cir. 1999); *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999); *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

The competent summary judgment evidence clearly indicates that Plaintiff was seen by medical personnel immediately following the alleged use of force incident and that he did not request follow-up care (other than an optometry appointment that revealed no need for medical intervention) for the alleged injuries resulting from the use of force. Further, there is no indication from any documents in the record that any of the named Defendants in any way either denied him access to medical care or delayed him from obtaining medical care. As such, Plaintiff failed to

raise a genuine issue of material fact concerning his claim of deliberate indifference, and his claims for deliberate indifference to medical needs against Defendants Gratz and Cruz should be dismissed.

### D.  Retaliation & Failure to Exhaust Administrative Remedies (Defendant Smith)

"Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin Cnty. Welcome Center v. Brown*, 466 U.S. 147, 152 (1984). "In the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Id.* (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)). Under the Prison Litigation Reform Act ("PLRA") "no action shall be brought with respect to prison conditions…by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA pre-filing exhaustion requirement is mandatory and non-discretionary." *Gonzalez v. Seal*, 702 F.3d 785, 787 (5th Cir. 2012).

The Fifth Circuit has approved of using summary judgment to "address exhaustion and other affirmative defenses not enumerated in Rule 12(b)." *Dillion v. Rogers*, 596 F.3d 260 (5th Cir. 2010) (comparing *Swanson v. Hearst Corp. Long Term Disability Plan*, 586 F.3d 1016, 1019 (5th Cir. 2009) (affirming summary judgment dismissal for failure to exhaust) and *Hager v. NationsBank N.A.*, 167 F.3d 245, 247-48 & n.1 (5th Cir. 1999) (approving of district court's granting plaintiff "procedural safeguards of Rule 56" after defendant moved to dismiss for failure to exhaust *and relied on affidavits* to support factual allegations) with *Carpenters Local Union No. 1846 v. Pratt-Farnsworth. Inc.*, 690 F.2d 489, 527-29 (5th Cir. 1982) (genuine issue of material fact prevents dismissal on summary judgment for failure to exhaust)).

"In determining exhaustion under the PLRA, we look to the processes established by the prison and the parties' use of these processes, beginning with the sufficiency of the inmate's 'complaint.'" *Moussazadeh v. Texas Dep't of Criminal Justice*, 703 F.3d 781, 788 (5th Cir. 2012) (citing *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004)). The complaint must give officials "time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id*. at 788 (citing *Porter v. Nussle*, 534 U.S. 516, 525 (2002)).

Here, Plaintiff filed over 847 pages of grievance documents between April 1, 2013 and December 31, 2013, during the time allowable to grieve the incidents alleged by Plaintiff's Complaint/Amended Complaint. Only a single Step 1 grievance mentions Defendant Smith, but the focus of Plaintiff's grievance in that instance is the removal of an insole, which Plaintiff alleges was in retaliation. ECF 93 at 42–44. The Step 1 grievance concerning Defendant Smith reads:

> Arising over 11Bldg. Security staff namely: to wit, C.O Gonzales; C.O. Chavez; C.O. Fox making an authorized seizure of medical issued property for medical purpose namely; to wit; right foot medical insole, around April 3, 2013, *under direct order of Cpt. Gene W. Smith*, on an adverse retaliative [sic] action against me for grievance complaint filed on Sgt. Andrew Gratz, Lt. Ray Cruz, and C.O. Deana Davis concerning assault and battery conducted on April 2, 2013, as a protected conduct. Ex A. at 42.

*Id*. at 43. Plaintiff did not raise this issue in his Step 2 grievance as required. Furthermore, Plaintiff makes no mention of the other allegations as to Defendant Smith in his Complaint/Amended Complaint in *any* grievance; namely, Plaintiff fails to articulate that he was moved to sub-standard housing, denied food, threatened, or that he was subjected to racial slurs. *Id*. In fact, the loss of a medical insole in retaliation is not a part of Plaintiff's claims, and that loss is the only grieved offense by Plaintiff regarding Defendant Smith. *Id*.

The Court finds that Plaintiff failed to exhaust his administrative remedies concerning his claims of retaliation against Defendant Smith. Thus, his claim should be dismissed.

## V.     **RECOMMENDATION**

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Joint Motion for Summary Judgment filed by Defendants McBroom, Gratz and Cruz be GRANTED. It is FURTHER RECOMMENDED that the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Defendant Smith be GRANTED, and Plaintiff's Amended Complaint should be DISMISSED with prejudice.

## VI.     **INSTRUCTIONS FOR SERVICE**

The United States District Clerk is directed to send a copy of these Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED January 6, 2021.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).